FILED
2018 Nov-02 PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GREEN TECHNOLOGY LTD CO.;**<br>**FRANK WANG,**<br><br>**PLAINTIFFS,**<br><br>**vs.**<br><br>**SOUTHERN COMPANY SERVICES, INC.,**<br><br>**DEFENDANT.** | ) | **CIVIL ACTION NO.**<br><br>____________________ |

## COMPLAINT

COME NOW Plaintiffs, GREEN TECHNOLOGY LTD CO. and FRANK WANG, and state their complaint as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff GREEN TECHNOLOGY LTD CO. ("Green Tech" or the "Plaintiff"), is a limited liability company formed under the laws of the state of Kentucky, with its principal place of business in Louisville, Kentucky.

2. Plaintiff FRANK WANG ("Wang" or the "Plaintiff") is an adult resident citizen of the state of Kentucky and is the Owner, Proprietor, and President of Green Technology Ltd. Co. Certain claims herein are asserted by Plaintiff Frank Wang in his personal and individual capacity.

3. Defendant SOUTHERN COMPANY SERVICES, INC. ("SCS" or "Defendant"), is an Alabama corporation with its principal place of business located in Atlanta, Georgia and doing business in Shelby County, Alabama.

4. The United States Department of Energy is hereinafter referred to as the "DOE."

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00, and complete diversity exists between Plaintiffs and the Defendant.

6. Venue is proper pursuant to 28 U.S.C. § 1391.

**FACTS**

**SCS and DOE**

7. The National Carbon Capture Center (NCCC) is a neutral test facility working to advance technologies to reduce greenhouse gas emissions from coal and natural gas-based power plants. The NCCC is located in Wilsonville, Shelby County, Alabama.

8. The NCCC is managed and operated for the U.S. Department of Energy by the Defendant, SCS. A Cooperative Agreement, #DE-FE0022596 (the "Cooperative Agreement"), governs the relationship between SCS and The U.S. Department of Energy ("DOE").

9. The Cooperative Agreement provided, among other things, the funding for the operation of the NCCC. The stated and intended purposes of this DOE award and funding was to provide testing and test results to technology development sources like Green Tech.

10. The NCCC project was renewed and funded for continuation on June 6, 2014. The term of the current project expires on May 31, 2019. SCS was approved for $187,499,927.00 to be paid under the DOE award (FE0022596). Funding of that DOE award is ongoing at this time.

11. The DOE invited and encouraged research and development of carbon capture technology from various development sources such as Green Tech.

12. Projects sponsored and funded by the DOE, such as the Green Tech technology, were intended to be tested at the NCCC. Pursuant to the Cooperative Agreement, DOE

sponsored projects, including the Green Tech technology, are required to be tested at the NCCC facility operated by SCS. A full spectrum of technologies from universities, collaborative institutions, industry, and private companies like Green Tech were intended to receive opportunities for testing of the $CO_2$ capturing solvent technology.

13. Such technology was intended by the DOE to meet or exceed the national $CO_2$ capture technology guidelines and goals currently in place, and to be enacted in the future.

**Green Tech and DOE**

14. One of the fundamental purposes of the DOE financial support and funding of the NCCC is to provide the necessary testing of DOE sponsored technology development projects. The testing results are used by DOE to award new and/or additional grant funding to technology developers and projects from the various DOE Funding Opportunity Announcements.

15. Green Tech was one such technology development project that would have been eligible to receive additional DOE awards in 2015, 2016 and 2017.

16. The DOE supported Green Tech technology by financial funding and research and development grants.

17. Prior to 2013, Green Tech had developed proprietary intellectual property and technology for a solvent technology to improve the reduction of greenhouse gas emissions. The $CO_2$ capture solvent technology is referred to as the "technology." The DOE encouraged and supported the development of the technology by Green Tech. The DOE, as part of that development, required the testing of the technology at NCCC to be a necessary part of every funding request and grant application to determine its scientific, technological, and commercial viability. Without the required testing at NCCC, a technology developer's funding request and grant application to DOE is deemed incomplete and ineligible for funding or a grant award.

18. The Cooperative Agreement between DOE and SCS calls for the testing of Green Tech technology and technology from other technology sources to occur specifically at the NCCC facility in Wilsonville, Alabama.

19. As discussed more herein, despite the NCCC being operational and despite numerous requests by Plaintiffs over many months, SCS wrongfully failed to conduct required testing for the Green Tech solvent technology, thus damaging Plaintiffs. The failure of SCS to ever schedule and test the Green Tech technology prevented Green Tech from being eligible to submit and receive any further DOE financial grant or funding awards from 2014 through 2017, which ultimately made Green Tech inoperable.

20. Funding awards from DOE were granted to other technology developers in 2014, 2015 and 2016.

21. Because Green Tech was a DOE sponsored project, DOE had a reasonable expectation that it would be provided test results from SCS on the Green Tech technology.

**SCS and Green Tech**

22. As stated, DOE sponsored technology developers, such as Green Tech, are required to have their technology tested specifically at NCCC in Wilsonville, Alabama in order to be considered for additional grant awards and DOE funding. Accordingly, beginning in 2013, Plaintiffs requested a scheduling of testing for Green Tech's $CO_2$ testing technology from SCS and its representatives. Express contracts, both verbal and written, were made between Green Tech and SCS whereby SCS would have Green Tech's technology tested at NCCC as required by DOE. Over a period of several months, SCS and its representatives agreed, promised and assured Plaintiffs that the Green Tech technology would be scheduled and tested. Plaintiffs relied on these promises and assurances from SCS.

23. Beginning in October 2013, Green Tech requested a schedule to test its technology at the NCCC.

24. On October 10, 2013, Green Tech requested a testing schedule for its technology. That testing schedule was delayed by SCS on October 15, 2013. SCS agreed the test would be conducted in June of 2014.

25. On February 17, 2014, Green Tech requested a schedule for its technology test. SCS again delayed that scheduled testing and agreed to perform the testing in December 2014.

26. On March 18, 2014, Green Tech requested confirmation of a test schedule for its solvent technology. SCS delayed the scheduled testing and agreed it would be performed in May of 2015.

27. On December 2, 2014, Green Tech requested confirmation of a testing date. SCS agreed that the test would be performed in June of 2015.

28. On January 1, 2015, Green Tech requested confirmation of a test date.

29. On February 9, 2015, Green Tech requested testing dates.

30. On February 13, 2015, SCS advised Green Tech that the testing would be further delayed and agreed the testing would be conducted sometime in the June to August 2015 timeframe. The testing was never performed.

31. On April 9, 2015, SCS agreed that the testing would begin June 29, 2015. The testing was never performed by SCS.

32. In July 2016, SCS agreed to a test start date of September 2016. This date was 28 months beyond the original start date as communicated by SCS on October 15, 2013. Again, the testing was never performed by SCS.

33. At all times relevant to Plaintiffs' claims, Green Tech remained ready, willing and able to provide its technology for testing by SCS at the NCCC.

34. Despite verbal and written contracts obligating SCS to perform the required testing at NCCC, SCS breached contracts with Green Tech by failing and/or refusing to conduct the requisite testing. Moreover, despite SCS's repeated representations and assurances that the requisite testing could and would be conducted by SCS at NCCC, SCS never performed the requisite testing and, upon information and belief, SCS had no intention to conduct the requisite testing despite Plaintiffs' numerous requests. SCS and its representatives suppressed and concealed from Plaintiffs the fact that SCS could not and/or would not perform the requested and requisite testing on the Green Tech technology.

35. As a DOE sponsored project, Green Tech was responsible for advising the Department of Energy of the ongoing progress of its $CO_2$ solvent technology. Green Tech had to execute three (3) "no cost" extensions to the project at DOE's request. Each "no cost" extension provided no additional funding from DOE and thus Green Tech had to absorb all cost and expenses related to these three extensions. Plaintiff Frank Wang was forced to utilize personal assets in order to keep Green Tech operational in the absence of further DOE funding, which Green Tech could not obtain without the requisite testing at NCCC.

36. Plaintiffs relied on the continued rescheduled testing dates and maintained Green Tech's technology and operations at great expense, including Frank Wang's personal expense.

37. SCS's failure to conduct the solvent testing resulted in injury and damage to Plaintiffs.

38. At all relevant times the communications and representations by SCS to Green Tech failed to be fully and wholly truthful. SCS failed to communicate that SCS would not

and/or could not perform the intended and required testing of the Green Tech technology. Such conduct constituted the wrongful suppression of a material facts.

39. Green Tech detrimentally relied on SCS's continued assurances on testing and the new testing dates at significant cost and expense. As a result, Plaintiffs sustained substantial financial injury and damages.

40. Plaintiffs incurred delay costs for a period of no less than 18 months and seek reimbursement for those costs from SCS. For each month of the delay, Plaintiffs incurred lost expense costs of $19,580 a month.

41. To date, SCS has paid only one month of lost expense costs borne by Plaintiffs. (September 2016).

42. These damages calculated by Green Tech included, among other things, wages, benefits and direct costs necessary to maintain Green Tech operations during the wrongful delays in testing. As stated, Frank Wang was forced to utilize personal assets to keep Green Tech operational.

43. Green Tech issued invoices to SCS for these expenses as follows:

| Date | Invoice | Amount | Date Paid | Delay Dates |
|---|---|---|---|---|
| 7/21/2016 | #16001 | $19,580.00 | 9/2/16 | 9/2/2016 |
| 8/4/2016 | #16002 | $254,540.00 | Unpaid | 7/2015-8/2016 |
| 11/21/2016 | #16003 | $78,320.00 | Unpaid | 9/2016-12/2016 |
| 1/31/2017 | #17001 | $13,338.80 | Unpaid | |
| | #16002 Finance Charge | | Unpaid | |
| | #16003 Finance Charge | | Unpaid | |
| 3/2/2017 | #17002 | $3,328.60 | Unpaid | |
| 2/2017 | Finance Charge | | | |
| 4/3/2017 | #17003 | $3,328.60 | Unpaid | |
| 3/2017 | Finance Charge | | Unpaid | |
| **TOTAL** | | **$352,856.00** | | |

44. Green Tech also seeks damages from SCS for the lost DOE grant award(s) for $CO_2$ carbon capture technology funding from 2015 through 2017.

45. Had SCS properly performed the testing on Green Tech's technology as it is required to, Green Tech would have been eligible for multiple DOE funding assistance awards during 2015, 2016 and 2017. The amount of each grant award would vary from approximately $3,000,000 each. Green Tech would have likely been awarded at least one grant for each eligible year, 2015, 2016 and 2017.

46. Given the limited number of competing technology development sources and potential applicants for each DOE funding assistance award and the high probability of receiving further DOE awards for 2015, 2016 and 2017, Green Tech has been damaged in the amount of at least three million and no/100 dollars ($3,000,000.00).

**SCS Testing**

47. In its budget report by SCS covering June 6, 2014 through May 31, 2015, significant testing was performed at the NCCC. This testing included several solvent technology tests. Green Tech was wrongfully excluded from the testing opportunity during the reporting period of June 6, 2014 through May 31, 2015.

48. In the next budget report covering June 2015 to July 2016, numerous tests were performed by NCCC. This testing included several solvent technology tests. Green Tech was also wrongfully excluded from the testing opportunity during that reporting period.

49. During the next budget reporting period August 1, 2016 to July 31, 2017, Green Tech was wrongfully denied an opportunity to test its technology.

50. In SCS's report to the DOE regarding the test run for the reporting period dated

September 13, 2015 through October 16, 2015, twelve different technologies were tested, some of which included solvent technology. Green Tech was wrongfully denied an opportunity to test its technology during that test period. (G-2).

51. In SCS's report to the DOE regarding NCCC testing during the reporting period dated March 17, 2016 through June 3, 2016, SCS tested thirteen technologies. Some of the testing during this period included solvent technology. Green Tech was wrongfully excluded from the testing opportunity (G3 and G4).

52. In November 2017, SCS announced that it had completed technology testing in excess of 100,000 hours at the NCCC. None of those hours were of the Green Tech technology for $CO_2$ capturing solvent.

**COUNT I**
**Breach of Contract**
**(On Behalf of Green Technology Ltd. Co. Only)**

53. Plaintiffs adopt and incorporate all previous allegations made in this Complaint.

54. As stated, express contracts, both verbal and written, were made between Green Tech and SCS whereby SCS would test Green Tech's technology at the NCCC facility as required by the DOE.

55. Despite verbal and written contracts obligating SCS to perform the required testing at NCCC, SCS breached contracts and agreements with Green Tech by failing and/or refusing to conduct the requisite testing. Moreover, SCS breached the implied duty of good faith and fair dealing in wrongfully failing and/or refusing to test Plaintiffs' technology when Plaintiffs had no other viable testing alternative and was required to have its technology tested at NCCC.

56. At all times, Green Tech remained willing, ready and able to provide its solvent technology and any other needed information or materials in order to have it tested at NCCC.

57. SCS breached its contract with Green Tech and as a result Green Tech has been damaged as described herein.

**COUNT II**
**Fraud and Suppression**
**(On Behalf of Green Technology Ltd. Co. and Frank Wang)**

58. Plaintiffs adopt and incorporate all previous allegations made in this Complaint.

59. During the relevant time period, SCS, through its representatives, repeatedly made promises and assurances to Plaintiffs that the Green Tech technology could and would be tested at NCCC. Plaintiffs relied on these representations to their detriment by maintaining Green Tech's operations under the belief that SCS would perform the testing as required in order for Green Tech to apply for additional grant funding. SCS and its representatives suppressed and concealed from Plaintiffs that it would not and/or could not perform the required testing and that it had no intention to perform the testing requested by Plaintiffs. Had these material facts been disclosed by SCS to Plaintiffs, Plaintiffs would not have incurred additional operating costs in maintaining Green Tech if Plaintiffs had known the Green Tech technology would have never been tested by SCS.

60. As a result of SCS's fraud and suppression, Plaintiffs have been damaged as described previously in this Complaint, including utilization of Plaintiff Frank Wang's personal assets to keep Green Tech operational.

**JURY DEMAND**

PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES.

CHARLES A. McCALLUM, III (ASB-5169-U83C)

OF COUNSEL:
R. Brent Irby (ASB-2773-R79R)
McCallum, Hoaglund & Irby, LLP
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama 35216
Telephone: (205)824-7767
Facsimile: (205)824-7768
Email: cmccallum@mhcilaw.com
birby@mhcilaw.com

RODNEY E. NOLEN (ASB-5398-N63R)
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
Post Office Box 55727
Birmingham, Alabama 35255-5727
Telephone: (205) 930-5100
Facsimile: (205) 930-5101
Email: rnolen@sirote.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED AS FOLLOWS:**

SOUTHERN COMPANY SERVICES, INC.
CORPORATION SERVICE COMPANY, INC.
641 SOUTH LAWRENCE STREET
MONTGOMERY, ALABAMA 36104